**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CASE NO. 1:21-CR-85** |
| | : | |
| | : | **JUDGE SUSAN J. DLOTT** |
| **v.** | : | |
| | : | |
| | : | **GOVERNMENT'S REPLY** |
| **TRES GENCO,** | : | **MEMORANDUM IN SUPPORT OF** |
| | : | **MOTION TO MODIFY SUPERVISED** |
| **Defendant.** | : | **RELEASE CONDITIONS** |
| | : | |
| | : | **Filed Under Seal** |

The United States respectfully submits this Reply Memorandum in support of its motion to modify the conditions of Defendant's supervised release, particularly with respect to Genco's residence near a college campus.

## I. FACTUAL BACKGROUND.

The defense devotes a large portion of its memorandum to relitigating the defendant's conviction. The defense argument minimizes the offense of conviction or that there was ever an attempt to commit violence.

As a reminder, in his guilty plea, Genco admitted that he "plotted and attempted to willfully cause bodily injury to women because of their actual or perceived gender. The conduct included an attempt to kill women through the use of a firearm and a dangerous weapon. . . . During the relevant period, GENCO considered himself a member of the Incel movement. . . . GENCO maintained profiles on an Incel website and posted hundreds of times. GENCO formulated a plot to kill women and intended to carry it out. In furtherance of his plot, GENCO possessed a Palmetto State Armory 5.56x45mm caliber firearm, to which he attached a bump stock, and a Glock-style Luger caliber semiautomatic pistol with the rear rails removed." (R. 60.)

The evidence supported this plea.  In addition to the evidence of his weapons, surveillance of schools, online incel activity and other writings, Genco created a note that was recovered from his phone entitled "isolated."  (PSR ¶ 32.)  The "Foreward" states: "If you're reading this, I've done something horrible.  Somehow you've come across the writings of the deluded and homicidal, not an easy task, and for that I congratulate you for your curiosity and willingness to delve into such a dark topic." *Id.*  The defendant signed it "Your hopeful friend and murderer, TBG." *Id*.  Thus, the risk of violence in this case was very real.

The defense devotes much of its response to the communications between Mr. Genco and supervisory personnel around the time of his transition to the halfway house.  This is irrelevant.  The government has made no claim that Mr. Genco failed to properly communicate with the probation department.   In short, it matters very little how this predicament arose because this Court ultimately has the final word on Mr. Genco's supervision and conditions.  The fact is that the defendant is seeking to reside in an apartment a few short blocks from residence halls at the university he threatened with a violent attack.  It is fully appropriate that the Court now address the issue of more restrictive conditions for the defendant's supervision.

## II.     THE CONDITIONS SOUGHT AT THIS JUNCTURE.

The government has requested a condition of supervised release requiring that defendant Genco's residence be located more than 2 miles from any Ohio university or college and that his residence location be pre-approved by the probation office.  If the district court seeks a narrower condition, the government would request that, at a minimum, the defendant be prohibited from living within 2 miles of College 1 and that he be prohibited from entering the premises of College 1, consistent with the campus ban that is already in place.

As an alternative, if not a residence location condition, the government would seek the imposition of electronic monitoring that would prohibit the defendant from going on the property of College 1.  The electronic monitoring units can be programmed with an exclusionary zone and

such a zone could be defined as the grounds of College 1. If the defendant were to enter the campus of College 1, the electronic monitoring device would identify the violation and notify the probation officer.

The defense complains that such restrictions were not raised at the initial sentencing. There is no requirement that they need be. But more importantly, Genco lived in California until approximately 2018. At the time of the offense, the defendant lived with his mother in Hillsboro, Ohio. Thus, Genco's residency in Ohio prior to this offense was fairly limited and he never lived in or near Franklin County, Ohio or College 1. There was no reason to anticipate that Genco would leave BOP custody and immediately move within blocks of the university campus. His choice of residence now makes it entirely proper for the Court to consider these conditions.

## III. LEGAL AUTHORITY FOR THE CONDITIONS.

### A. The Legal Authority for Residency and Travel Conditions.

Residency restrictions and travel conditions during court supervision are specifically authorized by statute. Pursuant to 18 U.S.C. § 3583(d), the court is permitted to order as a condition of supervised release, the conditions set forth as discretionary conditions of probation in 18 U.S.C. § 3563(b). 18 U.S.C. § 3563(b)(6) and (13) specify that a district court may require that a defendant: (6) "refrain from frequenting specified kinds of places or from associating unnecessarily with specified persons;" and (13) "reside in a specified place or area, or refrain from residing in a specified place or area."

18 U.S.C. § 3583(d) further requires that such discretionary condition:

(1) Is reasonably related to the factors set forth in 3553(a)(1) (nature and circumstances of the offense and history and characteristics of defendant), (a)(2)(B) (adequate deterrence), (a)(2)(C) (protection of the public from further crimes of defendant), and (a)(2)(D) (educational or vocational training or treatment);

(2) Involves no greater deprivation of liberty that is reasonably necessary for the

purposes set forth in 3553(a)(2)(B) (adequate deterrence), (C) (protection of public), and (D) (education or vocational training or treatment); and

(3) Is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a).

18 U.S.C. § 3583(d).

As an alternative, Subpart 19 of 18 U.S.C. § 3563(b) further allows a condition that the person remain at his place of residence during nonworking hours and allows for monitoring of compliance through electronic signaling devices.

### B. The Sixth Circuit Has Affirmed Residency Restrictions as Large as Multiple Counties, Much Broader Than Any Conditions Requested Here.

The residency restriction authorized in 18 U.S.C. § 3563(b)(13) has been applied to county-wide residency prohibitions in numerous cases, and in cases that do not involve sexual offenders. In *United States v. Alexander*, 509 F.3d 253 (6th Cir. 2007), the defendant violated his supervised release through several alcohol-related incidents. The district court imposed a condition that required the defendant to live in Grand Rapids for one year, instead of the reservation in the Upper Peninsula where he previously lived. The defendant appealed. Among other arguments, the defendant argued that the district court could have limited the restriction to banning him from living in his hometown or the surrounding counties, instead of forcing him to move a 6-hour drive away. The Sixth Circuit Court of Appeals affirmed the residency condition, holding that the restriction was authorized by 18 U.S.C. § 3563(b)(13), the restriction was reasonably related to the § 3553(a) factors, and the restriction involved no greater deprivation of liberty than reasonably necessary. 509 F.3d at 257-258.

Ten years after *Alexander*, the Sixth Circuit affirmed another residency restriction in *United States v. Rantanen*, 684 Fed. Appx. 517 (6th Cir. 2017). In *Rantanen*, the defendant had violations of supervised release due to ongoing criminal behavior. In an effort to mitigate the

ongoing issues, the district court added a condition that he be barred from his home county while on release.  On appeal, the Sixth Circuit affirmed, noting that residency restrictions are authorized by statute and this condition was reasonably related to the defendant's history. *Id*. at 520-21. The Sixth Circuit also held that the deprivation of liberty caused by the condition was not greater than reasonably necessary. *Id*. at 521-22; *see also, United States v. Meshigaud*, 815 Fed. Appx. 965, 968-69 (6th Cir. 2020) (affirming a restriction on entering two counties and a reservation); *United States v. Many White Horses,* 964 F.3d 825, 831 (9th Cir. 2020) (citing *Alexander*, affirmed condition banning defendant from living in his home city).

### C. Residency Restrictions Are Not Limited to Circumstances Where The Defendant Previously Violated Conditions.

The defense takes the position that residency restrictions of this type are imposed "only where violative conduct has occurred, and more narrowly tailored conditions have failed." (Defendant Memo., p. 9.)  That is not correct.  There is no requirement that prior violations of probationary terms are required to impose the residency condition.  The defense cited *United States v. LaCoste*, 821 F.3d 1187, 1193 (9th Cir. 2016) and *United States v. Inman*, 666 F.3d 1001 (6th Cir. 2012) in support of its position, but neither of those cases make such a statement. Indeed, neither case law nor statutory language imposes such a prerequisite on the imposition of a residency condition.

Several cases demonstrate that a residency restriction can be imposed at the outset of supervision, without prior violations.  In *United States v. Cothran*, 855 F.2d 749 (11th Cir. 1988), the defendant was convicted of distributing cocaine to a minor. The court sentenced to a community treatment center for 6 months followed by 60 months of probation.  During the first two years of his probation, the defendant was prohibited from living in or going into Fulton County.  This restriction was <u>not</u> based on any violations of prior conditions – this was part of the original sentence.  The defendant challenged the county residence restriction, but the

5

Eleventh Circuit affirmed. The court noted that the defendant frequented high crime areas in the county and was a popular figure among impressionable adolescents in his community. Given the offense involved selling drugs to children, the court of appeals held that the condition was reasonably related to the protection of the public from other offenses and the defendant's own rehabilitation. *Id.* at 752. The court further held that the prohibition was not contrary to public policy and that the geographic limitation was drawn narrowly enough. *Id*. at 752-53.

In *United States v. Sicher*, 239 F.3d 289 (3rd Cir. 2000), the defendant's original sentence included a condition that prohibited the defendant from entering the Allentown, PA area (defined as two counties) during supervision. The district court determined that the defendant would make better, sustained progress by staying away from her prior associates in Allentown. The defendant violated the geographic restriction and was expelled from a treatment center, so she was imprisoned again after a revocation. The district court again included a condition that prohibited her from going to Allentown, even though she had family in Allenton. The defendants filed a motion to remove the special condition, but it was denied. The defendant appealed to the Third Circuit Court of Appeals, who affirmed the condition. Again, the original term of supervised release included the geographical condition.

In *United States v. Garrasteguy*, 559 F.3d 34, 41-44 (1st Cir. 2009), the defendants' original sentence included a supervised release condition that prohibited the defendants from entering Suffolk County (Boston) for 8 and 12 years, respectively. Citing *Alexander*, *Sicher*, and *Cothran*, the First Circuit affirmed the restriction on plan error review. *Id*.; s*ee also, United States v. Watson*, 582 F.3d 974, 983-985 (9th Cir. 2009) (affirming imposition of supervised release condition prohibiting his presence in San Francisco county and city without prior approval).

As set forth in the cases above, the district court has full authority to impose a condition under 18 U.S.C. § 3563(b)(6) or (13), regardless of whether there were prior violations.

**IV.    A RESIDENCY CONDITION IS APPROPRIATE AND WARRANTED HERE.**

**A. The Conditions are Reasonably Related to the Sentencing Factors.**

As explained above, 18 U.S.C. § 3583(d) requires that the condition be "reasonably related" to the factors set forth in 3553(a)(1) (nature and circumstances of the offense and history and characteristics of defendant), (a)(2)(B) (adequate deterrence), (a)(2)(C) (protection of the public from further crimes of defendant), and (a)(2)(D) (training or treatment).

A restriction that prevents Mr. Genco from living within 2 miles of a college university is reasonably related to the nature and circumstances of the underlying offense and the defendant's history.   The restriction is also reasonably related to the protection of the public.

The underlying offense involved Mr. Genco's incel ideology and his plan to commit an attack on women at an Ohio university.  He made notes of his surveillance at one Ohio college, but the location was not identified.  One of the universities specifically referenced in Genco's notes was College 1 and a sorority was noted in his writings.  Around that same time, on August 3, 2019, the defendant created a document that he called his incel "manifesto."  (PSR at ¶ 29; Government Sentencing Memo, Exhibit E.)  The same day defendant created his manifesto, he also visited websites for two sororities, including one at College 1.  The defendant also performed a Google search for "sorority College 1," "College 1 sororities," and two named sororities.

On March 11, 2020, the defendant took a screenshot of a web search, the results of which included a page on police scanner codes, as well as a page on radioreference.com for "Franklin County (OH) – TheRadioReference Wiki," listing "College 1."  The Wiki page included radio codes for College 1 police.  The defendant also accessed Facebook pages for a specific College 1 sorority on unknown dates.  Therefore, the underlying offense and the specific public community at risk specifically relates to threats to Ohio universities and – with alarming specificity -- to

7

College 1.  Based on the Sixth Circuit case law set forth above, the requested restrictions are reasonably related to his offense and the protection of the public.

The defense cited *Lacoste*, in which the court of appeals vacated and remanded a residency restriction because the record was inadequate to support a four-county boundary. 821 F.3d at 1193.  The court of appeals stated that, "Simply declaring that a defendant is likely to resume a life of crime if he returns to a given area is not enough, <u>unless the reasons are obvious from the record</u>." *Id*. (emphasis added.)  Notably, defense counsel included the *Lacoste* quote but omitted the underlined language.  In *Lacoste*, the record did not support a four-county restriction.

In contrast, there is ample support in the record here to support the residency and travel restriction against Genco.  The location of the new apartment is troubling for several reasons. As noted in the prior memo, the evidence related to the underlying offense showed that Genco made numerous references to College 1 and specifically to sororities.  These references all resided within the context of his incel ideology and the evidence of his attempted violent attack.  Now, the defendant seeks to live roughly two blocks from College 1's campus and within walking distance of university's sorority housing and other off-campus housing.  The requested conditions are the result of and tailored specifically to the underlying offense conduct, the history of the defendant, and the protection of the public.  Therefore, the "reasonably related" standard is easily met.

**B.  The Condition is No More Restrictive Than Necessary.**

As described in the case law above, the condition must involve "no greater deprivation of liberty that is reasonably necessary" for the purposes set forth in 3553(a)(2)(B) (adequate deterrence), (C) (protection of public), and (D) (education or vocational training or treatment). 18 U.S.C. § 3583(d).  The case law in the Sixth Circuit and elsewhere has affirmed residency conditions under this standard that extended to entire counties.

In *Alexander*, the defendant was moved from his home in the Upper Peninsula, Michigan and required to live in Grand Rapids, Michigan for a year. 509 F.3d at 257-258. The Sixth Circuit Court of Appeals affirmed that restriction under the § 3583(d) standard. The same conclusion was reached in *Rantanen* and *Meshigaud*. 684 Fed. Appx. at 521-22 (barred from home county); 815 Fed. Appx. at 968-69 (barred from two counties and a reservation); *see also, United States v. Many White Horses,* 964 F.3d 825, 831 (9th Cir. 2020) (citing *Alexander*, affirmed condition banning defendant from living in his home city).

Here, the government does not seek a broad exclusion that bars a defendant from living in a particular county or even a city. Rather, the requested condition is tailored to provide an appropriate buffer between the defendant's residence and the victims chosen by the defendant, namely university campuses and specifically, College 1. Such restrictions seek "no greater deprivation of liberty that is reasonably necessary" for the purposes of the protection of the public and adequate deterrence.

## V. CONCLUSION.

Given the history discussed above, the government has serious safety concerns for the public. The government acknowledges that the Court must balance a person's need to transition back into society after imprisonment, but this residence choice seems to be provocative and unsafe. For the defendant's own sake, it would seem to be in the interest of his own transition and recovery to be physically separated from the source of irritation that he repeatedly expressed. For the sake of the public and the concerns that have been raised, the requested conditions would also foster the interest of the public's protection.

For the reasons set forth above, the government requests a condition of supervised release requiring that defendant Genco's residence be located more than 2 miles from any Ohio university or college and that his residence location be pre-approved by the probation office. At a minimum, the government requests that the defendant be prohibited from living within 2 miles

of College 1 and that he be prohibited from entering the premises of College 1, consistent with the campus ban that is already in place. As an alternative, if a residence location condition is not granted, the government seeks the imposition of electronic monitoring that would prohibit the defendant from going on the property of College 1.

Respectfully submitted,

DOMINICK S. GERACE II
United States Attorney

*s/Timothy S. Mangan*
Timothy S. Mangan (069287)
Assistant United States Attorney
221 East Fourth Street
Suite 400
Cincinnati, OH 45202
(513) 684-3711

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion has been served via email on defense counsel of record.

*s/Timothy S. Mangan*
Timothy S. Mangan (069287)
Assistant United States Attorney